*NOT FOR PUBLICATION*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARCIA COPELAND,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>US BANK CUST PC5 STERLING NATIONAL, US BANK, N.A., WELLS FARGO, N.A., ATTORNEY GENERAL OFFICE, GOVERNOR'S OFFICE, GARY ZEITZ, LAW FIRM OF GARY ZEITZ, NAN FAMULAR, SURETY TITLE COMPANY, SELL-ALL-PROPERTIES, LLC, ROBIN ZEITZ, TAX OFFICE, CAMDEN COUNTY SHERIFF'S OFFICE,<br><br>　　　　　Defendants. | Civil Action No. 20-07016 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

*Pro se* Plaintiff Marcia Copeland ("Plaintiff" or "Copeland"), brought this action against Defendants US Bank Cust PC5 Sterling National ("Sterling National"), US Bank, N.A. ("US Bank"), Wells Fargo, N.A. ("Wells Fargo"), the New Jersey Attorney General's Office ("Attorney General's Office"), the New Jersey Governor's Office ("Governor's Office"), Gary Zeitz ("Gary Zeitz"), Law Firm of Gary Zeitz ("Zeitz Law Firm"), the Hon. Nan S. Famular, J.S.C. ("Judge Famular"), Surety Title Company ("Surety Title"), Sell-All-Properties, LLC ("Sell-All"), Robin Zeitz ("Robin Zeitz"), Tax Office ("Tax Office"), and Camden County Sheriff's Office ("Camden County Sheriff's Office") (collectively, "Defendants"), in connection with what appears to be the foreclosure of several properties located in New Jersey.

Presently before the Court are four separate motions. First, Sell-All and Wells Fargo separately move to dismiss the Operative Complaint (as defined herein) on various grounds,

including failure to state a claim under Fed. R. Civ. P. 12(b)(6). Also, before the Court, are two motions for preliminary injunction filed by Plaintiff. (ECF Nos. 85 and 86.) For reasons set forth below, Sell-All's motion to dismiss and Wells Fargo's motion to dismiss are **GRANTED**, and Plaintiff's claims against those defendants are dismissed without prejudice. Next, the Court *sua sponte* dismisses Plaintiff's Operative Complaint against Sterling National, US Bank, the Zeitz Law Firm, Gary Zeitz, Robin Zeitz, Judge Famular, and the Tax Office, with prejudice, on *res judicata* grounds. Finally, Plaintiff's motions for preliminary injunction are **DENIED**.

## I.  FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for the purpose of the motions to dismiss filed by Sell-All and Wells Fargo. (ECF No. 93, Operative Complaint ("Compl.").)[1]

### A.  Factual Background

The Operative Complaint in this matter is hardly a model of clarity, and therefore, the Court strives to accurately construe and summarize the factual allegations pled by Plaintiff in support of her claims. According to Plaintiff, Judge Famular and the New Jersey Superior Court "acted as a criminal enterprise." (*Id.* at ¶ 1.) Specifically, in what appears to be a reference to at least one, if not multiple, prior state court foreclosure actions, Plaintiff claims that Judge Famular used her judicial office to "steal [Plaintiff's] property under the guise of law." (*Id.* at ¶ 2.) According to Plaintiff, Judge Famular "steals properties" with the help of her office and "neither she nor her cronies ever pay a purchase price for the immovable property." (*Id.*) As a result, Plaintiff seeks the return of unidentified properties that purportedly belong to her, as well as back rent. (*Id.*)

---

[1]  As explained in detail below, *infra*, Plaintiff has filed several documents titled "Amended Complaints." (*See* ECF Nos. 48, 49, 50, 58, 77.) The Court considers the latest filing of an Amended Complaint on January 14, 2021, to be the operative Complaint governing this dispute. (ECF. No. 93.)

In addition, the remainder of the Operative Complaint contains allegations related to the Hon. Noel L. Hillman, U.S.D.J.; the Hon. Deborah Silverman Katz, J.S.C; Marty Abo; the Hon. Mary Eva Colalillo, J.S.C.; and the Hon. Robert G. Millenky, J.S.C. (*Id.* at 3-7.) In that regard, Plaintiff appears to allege that these individuals, although not named as defendants, are also somehow involved in the "theft" of her property. (*Id.*)

Notably, the Operative Complaint does not expressly reference the specific property or properties that were subject to the underlying foreclosure action(s) that Plaintiff contests, nor does Plaintiff provide any of the procedural history or background related to those foreclosure actions. For that information, the Court relies on the representations and documentation provided in the motions to dismiss filed by Sell-All and Wells Fargo.[2]

According to Sell-All, it is a real estate brokerage company; Plaintiff's property located at 451 Line Street, Camden, New Jersey (the "Camden Property") was foreclosed upon ("Camden Foreclosure Action") and title was subsequently vested with Sterling National. Sell-All maintains that it was not involved in the foreclosure action, but rather, it only listed and sold the property on behalf of Sterling National.

---

[2] The Court considers the allegations in Plaintiff's Operative Complaint as well as "exhibits attached to [it] and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). The Court also considers "undisputedly authentic document[s] that [Defendants] attach[ ] as an exhibit to [their] motion to dismiss," to the extent that Plaintiff's claims are based thereon. *Pension Benefit*, 998 F.2d at 1196. The Court further considers extrinsic documents that are integral to Plaintiff's Amended Complaint. *See Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2003) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim."); *In re Burlington*, 114 F.3d at 1426 (explaining that a document forms the basis of a claim if the document is "integral to ... the complaint"); *Shelley v. Wilson*, 339 Fed. App'x. 136, 137 n.2 (3d Cir. 2009). Indeed, particularly "in cases where a *pro se* plaintiff is faced with a motion to dismiss," as here, "it is appropriate for the court to consider materials outside of the complaint to the extent they are consistent with the allegations in [it]." *Donhauser v. Goord*, 314 F. Supp. 2d 119, 121 (N.D.N.Y. 2004) (citations omitted).

Sell-All further explains that the Camden Property, and the underlying Camden Foreclosure Action, were the subject of a subsequent civil action before another district judge ("*Copeland I*") that generally arose out of the same facts and named many of the same Defendants as this matter. *See Copeland v. US Bank*, No. 18-19, 2018 WL 4145900, at *5 (D.N.J. Aug. 30, 2018). There, Plaintiff asserted three causes of action: (1) "Amendment 4, 14, Due process," (2) "Theft (Bank Fraud)," and (3) "RICO," against four defendants: US Bank, the Zeitz Law Firm, the City of Camden Tax Office, and Judge Famular. *Id.* at *1. The court found that Judge Famular entered a September 25, 2017 Order, concluding that the Camden Property was "an abandoned property," and on March 20, 2018, Judge Famular entered Final Judgment. *Id.* Ultimately, in its Order and Opinion dated August 30, 2018, the court dismissed Plaintiff's complaint with prejudice based on a finding that her use of "vague and conclusory allegations of malfeasance" attempted to "mask her dissatisfaction with a state court proceeding where adequate remedies of appeal and other due process are no doubt available." *Id.* at *4.

More specifically, the court dismissed the claims against Judge Famular based on judicial immunity, reasoning that "all allegations against Judge Famular in this case arise from actions taken in the Judge's judicial capacity." *Id.* at *2. In that regard, the court found "no indication that any of those actions were taken 'in the complete absence of all jurisdiction.'" *Id.* Further, the court concluded that Plaintiff's claims against the remaining defendants could not proceed, as they failed to state a claim under Fed. R. Civ. P. 12(b)(6). *Id.* First, the court found that because Plaintiff failed to make a showing on each of the elements necessary to sustain a RICO claim, "except perhaps an injury to property," that claim was "completely unsupported by Plaintiff's Complaint." *Id.* at *3. Indeed, the court noted that Plaintiff alleged only a single illegal foreclosure, making an allegation of a RICO pattern impossible. *Id.* at *5. Similarly, as to Plaintiff's constitutional claims,

the court found that regardless of whether Plaintiff's claim was for substantive or procedural due process violations, it failed to state a claim. At the outset, the court noted that Plaintiff's constitutional claims were incurably deficient as to the private parties. *Id.* at *5. As for conduct alleged by the City of Camden, the court found that while Plaintiff alleged a deprivation of property, she did not plead facts to show any governmental conduct that was unreasonable or would shock the conscience, and further, Plaintiff's allegations as to the City of Camden were "vague and conclusory and appear to arise solely from its ability to assess and collect taxes." *Id.* at *4. Accordingly, in dismissing the complaint with prejudice and denying Plaintiff leave to amend, the court summarized Plaintiff's claims as follows:

> In the end, Plaintiff, as her joinder of Judge Famular makes clear, seeks to use vague and conclusory allegations of malfeasance to mask her dissatisfaction with a state court proceeding where adequate remedies of appeal and other due process are no doubt available. Plaintiff will not be granted leave to amend what appears in all respects to be a frivolous and vexatious suit, and the Clerk of the Court will be directed to close this case.

*Id.* at *5.

As for Wells Fargo, Plaintiff's claims appear to relate to foreclosure of a different property located in Pennsauken, New Jersey. Wells Fargo represents that on January 28, 2004, Plaintiff obtained a Loan in the amount of $45,500.00 from WMC Mortgage Corp. (the "Loan"). To secure the Loan, Plaintiff executed and delivered a Mortgage and Promissory Note for property located at 4313 Lario Way, Pennsauken, New Jersey 08110 (the "Pennsauken Property"). The Pennsauken Property was subject to a separate foreclosure filed by Wells Fargo on September 29, 2017, in the Superior Court of New Jersey under Docket No. F-022462-173 ("Pennsauken Foreclosure Action"). *See* Certification of Diane A. Bettino, Esq. ("Bettino Cert."), Pennsauken Foreclosure Action Docket Report, Ex. A. On May 23, 2019, the Superior Court entered an Order for Final

Judgment and Writ of Execution, and the Pennsauken Property was sold on July 24, 2019. (Bettino Cert., Order for Final Judgment and Writ of Execution, Ex. B.)

### B.  Procedural History

The Court notes that the procedural history of this case is confusing and difficult to follow.

On July 26, 2019, Plaintiff filed a Complaint in the United States District Court for the District of Connecticut against Defendants. (ECF No. 1.) In the months thereafter, Plaintiff sought to amend her Complaint several times. Specifically, Plaintiff filed an Amended Complaint on August 22, 2019, Plaintiff moved to amend her Complaint to include an additional forty-five Defendants on September 25, 2019, and Plaintiff filed a second Motion to Amend the Complaint to include an additional eighteen causes of actions against "all Defendants" on September 25, 2019. (ECF Nos. 14, 35, 36.)

On February 11, 2020, the Connecticut District Court granted Plaintiff leave to amend the Complaint consistent with federal pleading requirements by March 3, 2020; however, Plaintiff did not meet that deadline. (ECF Nos. 44.) Rather, Plaintiff filed a series of purported amended complaints on March 17, 2020; March 19, 2020; March 20, 2020; and April 16, 2020 (ECF Nos. 48, 49, 50, 58.) In response, Defendants filed oppositions to the amendments and Motions for Non-Suit pursuant to Fed. R. Civ. P. 41(b) due to Plaintiff's failure to comply with the Connecticut District Court's Orders and deadlines.

On May 26, 2020, before ruling on the pending motions filed by Defendants, the Connecticut District Court transferred the case to this Court. (ECF No. 66.) Specifically, the Connecticut District Court found that venue in Connecticut was improper and "puzzling," as there was no discernible connection to the State of Connecticut given that Plaintiff is a New Jersey

resident, the property at issue is in New Jersey, most of defendants are in New Jersey, and all of the events giving rise to this litigation occurred in New Jersey. (*Id.*)

Following the case's transfer, the Magistrate Judge held a telephonic status conference on July 22, 2020. During that conference, the Magistrate Judge addressed the multiple amended complaints, including Plaintiff's filing of a "Fifth Amended Complaint" and Defendants' subsequent objections. On that same date, the Magistrate Judge entered an Order directing Plaintiff to file a single, unified "Second" Amended Complaint by August 7, 2020, with all of her claims against all Defendants (ECF No. 75.) The Order further required Plaintiff to file proof of service as to any unrepresented Defendants by August 7, 2020. (*Id.*) Plaintiff, however, did not file the Second Amended Complaint or the proof of service as ordered. Rather, on August 25, 2020, Plaintiff filed a Notice of Motion to Extend the time to serve Defendants. (ECF No. 77.)

On September 2, 2020, Plaintiff filed a Motion for an Emergency Hearing. (ECF No. 79.) On September 9, 2020, the Magistrate Judge issued an Order granting Plaintiff an extension to file a complete Amended Complaint by September 30, 2020, inclusive of all her claims and naming all defendants. (ECF No. 84.) Rather than file a Second Amended Complaint, however, Plaintiff filed a motion for injunctive relief against Wells Fargo on December 18, 2020, and a motion for injunctive relief against all Defendants on December 22, 2020. (ECF No. 85 and 86.) In her motion for preliminary injunction against Wells Fargo, Plaintiff seeks an order that (1) overturns the decision in the Pennsauken Foreclosure Action, (2) returns the Pennsauken Property to her that was sold at a sheriff's sale in 2019, and (3) compels the purchaser, and current tenant, of the Pennsauken Property to pay her back rent from 2019 through the present. As to the motion for preliminary injunction against all Defendants, Plaintiff appears to seek equitable and monetary

relief related to six properties, including the Camden and Pennsauken Properties.[3]  Specifically, Plaintiff seeks to enjoin "all illicit transactions" related to the six properties in "the Chancery Division of NJ Superior Courts," return of the six properties to Plaintiff, and rental payments for each property from the date of seizure to the date of return.

On January 5, 2021, Wells Fargo and Sell-All filed separate oppositions to Plaintiff's Motions and cross-moved for dismissal of Plaintiff's Amended Complaint.  (ECF Nos. 89 and 90.) Rather than respond to Wells Fargo's and Sell-All's motions, however, Copeland filed the Operative Complaint.  (ECF No. 93.)  The Operative Complaint asserts six causes of action, including: (1) violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"); (2) violations of the Fourth and Fourteenth Amendments of the U.S. Constitution; (3) unlawful enrichment; (4) "cronyism, and judges selection v. election was used to libel slander and suppress [her] voice"; (5) "hate crimes"; and (6) "color of law abuses."

Accordingly, on January 21, 2021, the Court entered an order denying the pending motions to dismiss filed by Wells Fargo and Sell-All, without prejudice, as moot due to the filing of the Operative Complaint.  (ECF No. 94.)  The Court further directed that Wells Fargo and Sell-All refile their motions to dismiss based on the then-recently filed Operative Complaint within fourteen days from the date of the Order. (*Id.*)

On February 2, 2021 and February 4, 2021, Sell-All and Wells Fargo filed motions to dismiss Plaintiff's Operative Complaint.  (ECF Nos. 95 and 97.)

---

[3]    The properties cited in Plaintiff's motion for preliminary injunction include: (1) 1031 Tristram Circle, Mantua, New Jersey; (2) 451 Line Street, Camden, New Jersey; (3) 1047 Beideman Street, Camden, New Jersey; (4) 1026 Alcyon Drive, Bellmawr, New Jersey; (5) 121 East Browning Road, Bellmawr, New Jersey; and (6) 4313 Lario Way, Pennsauken, New Jersey.

## II.    <u>LEGAL STANDARDS</u>

### A.    **Fed. R. Civ. P. 12(b)(6)**

Courts undertake a three-part analysis when considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)) (alteration in original). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quotation omitted). In doing so, the court is free to ignore legal conclusions or factually unsupported accusations that merely state, "the-defendant-unlawfully-harmed-me." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "[M]ere restatements of the elements of [a] claim[ ] ... are not entitled to the assumption of truth." *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) (alterations in original) (quotation omitted). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). "The defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citation omitted).

"Rule 12 prohibits the court from considering matters outside the pleadings in ruling on a motion to dismiss for failure to state a claim ... and a court's consideration of matters outside the pleadings converts the motion to a motion for summary judgment." *Kimbugwe v. United States*, No. 12-7940, 2014 WL 6667959, at *3 (D.N.J. Nov. 24, 2014). "[A]n exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment." *In re Burlington Coat*

*Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis omitted) (internal quotation marks omitted). Notwithstanding these principles, courts may not consider allegations raised for the first time in a plaintiff's opposition to a motion to dismiss. *See Pennsylvania ex rel Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

Finally, because Copeland has filed her Amended Complaint *pro se*, I construe it liberally and in the interests of doing substantial justice. *See*, *e.g.*, *Higgs v. AG of the United States*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a pro se litigant's pleadings is well-established."); *Alston v. Parker*, 363 F.3d 229, 234 (3d Cir. 2004) ("Courts are to construe complaints so as to do substantial justice, keeping in mind that pro se complaints in particular should be construed liberally."); *Dluhos v. Strasberg*, 321 F.3d 365, 369 (3d. Cir. 2003) ("apply[ing] the applicable law, irrespective of whether the *pro se* litigant has mentioned it by name," on a motion to dismiss) (citations omitted). Even so, I am not required to credit "bald assertions" or "legal conclusions" simply because Copeland is proceeding *pro se*. *See Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997). A *pro se* complaint may just as readily be dismissed if it sets forth allegations which cannot be construed to supply facts supporting a claim for relief. *See Milhouse v. Carlson*, 652 F.2d 371, 373 (3d Cir. 1981); *Grohs v. Yatauro*, 984 F. Supp. 3d 273, 282 (D.N.J. 2013).

### B.    Preliminary Injunction

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Figueroa v. Precision Surgical, Inc.*, 423 Fed. Appx. 205, 208 (3d Cir. 2011) (quoting *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997)). It is well-settled that a party seeking a preliminary injunction must

establish the following: (1) a likelihood of success on the merits; (2) that he will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the nonmoving party; and (4) that the public interest favors such relief. *Kos Pharms. Inc. v. Andrx Corp.*, 369 F.3d 700, 708 (3d Cir. 2004). All four factors must favor preliminary relief. *Lanin v. Tenafly*, 515 Fed. Appx. 114, 117 (3d Cir. 2013) (citing *Duraco Products, Inc. v. Joy Plastic Enterprises*, 40 F.3d 1431, 1438 (3d Cir. 1994). "A plaintiff's failure to establish any element in its favor renders a preliminary injunction inappropriate." *NutraSweet Co. v. Vit–Mar Enters., Inc.*, 176 F.3d 151, 153 (3d Cir. 1999).

## III.   DISCUSSION

### A.   Sell-All and Wells Fargo Motions to Dismiss

While Sell-All and Wells Fargo separately move to dismiss Plaintiff's Operative Complaint, they do so for the same reason, arguing that the Operative Complaint does not assert any claims against either party. Indeed, both Sell-All and Wells Fargo emphasize that at no point in the Operative Complaint's seven paragraphs does Plaintiff refer to either Sell-All or Wells Fargo, nor do any of the factual allegations discuss conduct purportedly performed by either party. I agree.

Here, the Magistrate Judge has ordered, on multiple occasions, that Plaintiff file a complete and comprehensive amended complaint, clearly asserting all claims related to the alleged theft of her property against any known defendants. Indeed, as discussed above, *supra*, on July 22, 2020, the Magistrate Judge conducted a telephone conference with the parties. Having observed that Plaintiff had filed a number of "Amended Complaints," *see* ECF Nos. 48, 49, 50, 58, after being granted leave to amend, the Magistrate Judge asked Plaintiff which "Amended Complaint" she intended to be the operative pleading in this case. Plaintiff responded that the Court should

consider all of them together as her operative pleading.  However, because the Third Circuit has noted that, "liberal construction of a *pro se* amended complaint does not mean accumulating allegations from superseded pleadings," the Magistrate Judge properly denied Plaintiff's request. *See Argentina v. Gillette*, 778 F. App'x 173, 175 (3d Cir. 2019).  Rather, the Magistrate Judge gave Plaintiff an opportunity to file "a single, unified Amended Complaint containing all claims she wishes to bring against all applicable Defendants by August 7, 2020."  Plaintiff did not comply. Thereafter, on August 25, 2020, Plaintiff filed a Notice of Motion seeking to "extend the time to serve defendants notice of process."  (ECF No. 77.)  Attached to the Notice of Motion was a typewritten document signed by Plaintiff, that according to the Magistrate Judge, had "the potential to be construed as an Amended Complaint"; however, Plaintiff's intent was not clear, because the document was "not filed on its own but rather accompanied a Notice of Motion, […] contain[ed] no caption, [was] untitled, and […] d[id] not bear the hallmarks of a typical pleading."  Thus, on September 9, 2020, the Magistrate Judge again ordered Plaintiff to "file a complete, all-inclusive Amended Complaint," or alternatively, to "advise the Court in writing that the document accompanying the Notice of Motion at ECF No. 77 was intended to be her Amended Complaint and the Court will direct that it be filed as such."  (ECF No. 84.)

In response, Plaintiff, several months later, filed her Operative Complaint on January 14, 2021, which asserts six causes of action against thirteen Defendants, including Sell-All and Wells Fargo.  Significantly, the Operative Complaint does not reference either Sell-All or Wells Fargo once, let alone plead any factual allegations with respect to either defendant that could sustain causes of action under RICO, violations of the Fourth and Fourteenth Amendments of the U.S.

Constitution, or unlawful or unjust enrichment.[4]  Instead, the bulk of Plaintiff's Operative Complaint relates to the conduct of individuals or entities who are not named defendants in this action.  And, although some of Plaintiff's prior complaints filed in this action, as well as her motions for preliminary injunction provide some factual allegations against Sell-All and Wells Fargo, none of those facts are contained in the Operative Complaint, despite express instructions by the Magistrate Judge.  Indeed, an amended pleading must be able to stand on its own without reference to an earlier pleading, as an amended pleading supersedes an earlier pleading and renders the earlier pleading a nullity.  *See Garrett v. Wexford Health*, 938 F.3d 69, 82 (3d Cir. 2019). Accordingly, Plaintiff's claims against Sell-All and Wells Fargo are dismissed without prejudice, and in addition, as the Court discusses below, even if the Amended Complaint could be construed to assert claims against Sell-All in connection with the Camden Property, such claims are subject to dismissal based on the principles of *res judicata* in light of the decision in *Copeland I*.  On the other hand, because any claims against Wells Fargo would seemingly involve the Pennsauken Property, they would not be covered by the decision in *Copeland I*, and therefore, not subject to dismissal based on *res judicata* principles.

**B.  Dismissal of Claims Against the Sterling National, US Bank, the Zeitz Law Firm, Robin Zeitz, Gary Zeitz, and Judge Famular, and the Tax Office**

As for Sterling National, US Bank, the Zeitz Law Firm, Robin Zeitz, Gary Zeitz, Judge Famular, and the Tax Office, (collectively, the "*Copeland I* Defendants"), I note that because Plaintiff's claims against them appear to mirror the claims asserted against them in *Copeland I*,

---

[4]     Notably, Plaintiff's purported claims of "cronyism, and judges selection v. election was used to libel slander and suppress [her] voice," "hate crimes," and "color of law abuses" are not recognized causes of action, and therefore, these claims are dismissed with prejudice as to all Defendants.

the Court will *sua sponte* consider whether Plaintiff's claims are barred by the principles of *res judicata*.[5]

"*Res judicata* encompasses two preclusion concepts-issue preclusion, which forecloses litigation of a litigated and decided matter (often referred to as direct or collateral estoppel), and claim preclusion, which disallows litigation of a matter that has never been litigated but which should have been presented in an earlier suit." *Bierley v. Dombrowski*, 309 Fed.Appx. 594, 596–97 (3d Cir. 2009). "Claim preclusion prevents claims between the same parties from being litigated anew after a final judgment has been entered in a previous suit." *Toscano v. Connecticut Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008). The doctrine bars not only claims that were actually brought in a previous lawsuit, but also claims that could have been brought in the prior suit. *Duhaney v. Attorney Gen. of U.S.*, 621 F.3d 340, 347 (3d Cir. 2010). Requiring plaintiffs to present all claims arising out of the same occurrence in a single suit is designed to "avoid

---

[5]      The Court notes that while *res judicata* is an affirmative defense, which must generally be raised by the moving party, *Ciarrocchi v. Kennedy Mem'l Hosp.*, 378 Fed.Appx. 239, 241 (3d Cir. 2010), even if no party has raised a *res judicata* defense, a court may *sua sponte* dismiss a claim on *res judicata* grounds "if a court is on notice that it has previously decided the issue presented ...." *Arizona v. California*, 530 U.S. 392, 412 (2000) (citation and internal quotation marks omitted); s*ee Reaves v. Pennsylvania Bd. of Prob. & Parole*, 580 Fed.Appx. 49, 52 (3d Cir. 2014) ("We have suggested that *sua sponte* consideration of preclusion can be appropriate in certain circumstances."); *see, e.g.*, *Salerno v. Corzine*, 449 Fed.Appx. 118, 122 (3d Cir. 2011) (affirming district court's *sua sponte* dismissal on the basis of claim preclusion); *Ciarrocchi*, 378 Fed.Appx. 239, 241 (3d Cir. 2010) (affirming the district court's *sua sponte* dismissal of the complaint on the ground of issue preclusion); *King v. E. Lampeter Twp.*, 69 Fed.Appx. 94, 96 (3d Cir. 2003) (affirming the district court's finding that the plaintiff was "barred from raising any allegations relating to claims that were or could have been raised in [the first action] by principles of [claim preclusion] and collateral estoppel," where the district court had *sua sponte* raised both preclusion defenses); *Bieregu v. Ashcroft*, 259 F. Supp. 2d 342, 352 (D.N.J. 2003) (*sua sponte* raising issue preclusion to dismiss a claim); *Hussein v. Lolita Reality*, No. 11–3955, 2013 WL 5530256, at *3–4 (D.N.J. Oct. 3, 2013) (*sua sponte* raising claim preclusion to bar a plaintiff from asserting a claim). Indeed, *sua sponte* raising a preclusion defense "is fully consistent with the policies underlying *res judicata*: it is not based solely on the defendant's interest in avoiding the burdens of twice defending a suit, but is also based on the avoidance of unnecessary judicial waste." *Arizona*, 530 U.S. at 412 (citation and internal quotation marks omitted).

piecemeal litigation and conserve judicial resources." *Sheridan v. NGK Metals Corp.*, 609 F.3d 239, 260 (3d Cir. 2010). To that end, claim preclusion exists to "protect litigants from the burden of relitigating an identical issue with the same party or his privy and ... promot[es] judicial economy by preventing needless litigation." *Post v. Hartford Ins. Co.*, 501 F.3d 154, 169 (3d Cir. 2007) (citation omitted); *see Gage v. Warren Tp. Committee & Planning Bd. Members*, 463 Fed. Appx. 68, 72 (3d Cir. 2012) ("The doctrine of claim preclusion is central to the purpose for which civil courts have been established, the conclusive resolution of disputes, and seeks to avoid the expense and vexation of multiple lawsuits, while conserving judicial resources and fostering reliance on judicial action by minimizing the possibility of inconsistent decisions.").

A party seeking to invoke claim preclusion must establish the following three elements: "'(1) a final judgment on the merits in a prior suit involving (2) the same parties or their privies and (3) a subsequent suit based on the same cause of action.'" *Strunk v. Wells Fargo Bank, N.A.*, 614 Fed.Appx. 586, 588 (3d Cir. 2015) (quoting *Lubrizol Corp. v. Exxon Corp.*, 929 F.2d 960, 963 (3d Cir. 1991)). The Third Circuit has advised that this test should not be applied "mechanically"; instead, courts should "'focus on the central purpose of the doctrine, to require a plaintiff to present all claims arising out [of] the same occurrence in a single suit.'" *Sheridan*, 609 F.3d at 260 (quoting *Churchill v. Star Enterprises*, 183 F.3d 184, 194 (3d Cir. 1999)).

Here, the Court finds that claim preclusion bars Plaintiff's claims in this case against the *Copeland I* Defendants as they relate to the Camden Property. First, in *Copeland I*, the court there dismissed Plaintiff's complaint with prejudice, which constituted a final judgment on the merits.[6] *See ITT Corp. v. Intelnet Int'l Corp.*, 366 F.3d 205, 214 n.17 (3d Cir. 2004) ("[A] dismissal with

---

[6] Plaintiff's appeal of the court's decision in *Copeland I* was dismissed for lack of jurisdiction because her notice of appeal was untimely. *See Copeland v. US Bank*, No. 18-3615, 2019 WL 2305582, at *1 (3d Cir. Jan. 24, 2019).

prejudice clearly constitutes an adjudication on the merits..."); *see also Velasquez v. Franz*, 589 A.2d 143, 148 (N.J. 1991) ("A judgment of involuntary dismissal or a dismissal with prejudice constitutes an adjudication on the merits 'as fully and completely as if the order had been entered after trial.'") (quoting *Gambocz v. Yelencsics*, 468 F.2d 837 (3d Cir. 1972)).

Second, I find that "same parties or their privies" requirement of claim preclusion is clearly satisfied, because Plaintiff, Sterling National,[7] the Zeitz Law Firm, Judge Famular, and the Tax Office were parties to both suits. Additionally, while Plaintiff did not name Gary Zeitz or Robin Zeitz as defendants in *Copeland I*, the Third Circuit has explained that claim preclusion "may be invoked against a plaintiff who has previously asserted essentially the same claim against different defendants where there is a close or significant relationship between successive defendants." *Lubrizol*, 929 F.2d at 966 (quoting *Gambocz v. Yelencsics*, 468 F.2d 837, 841 (3d Cir. 1972)); *see, e.g.*, *Hickox v. Cty. of Blair*, 591 Fed.Appx. 107, 110 (3d Cir. 2014) (affirming the district court's dismissal of the plaintiff's second complaint on the ground of claim preclusion, despite the fact that the second complaint included an additional defendant not named in the first); *Sheridan*, 609 F.3d at 261 (finding that the defendant-company "met the 'same parties' requirement of the claim preclusion defense because [the plaintiff] and the [defendant-company] were parties in both actions. The fact that there are additional parties in [the second action] does not affect our conclusion."); *Heine v. Dir. of Codes & Standards*, No. 15–8210, 2017 WL 3981135, at *8 (D.N.J. Sept. 11, 2017) (applying claim preclusion, where the parties in the first and second actions were identical, with the exception of several additional parties in the second case). And, significantly for the purposes of the present case, "a lesser degree of privity is required for a new defendant to

---

[7]    Improperly pled in *Copeland I* as "US Bank." *Copeland v. US Bank*, No. 18-19, 2018 WL 4145900, at *1.

benefit from claim preclusion than for a plaintiff to bind a new defendant in a later action." *Lubrizol*, 929 F.2d at 966. Gary and Robin Zeitz represented Sterling National and the Zeitz Law Firm in *Copeland I*, and any allegations levied against those two individuals in this case would appear inextricably intertwined to those asserted against the defendants in *Copeland I*, stemming from the foreclosure of Plaintiff's Camden Property. Accordingly, given the close and significant relationship between the *Copeland I* Defendants, specifically the Zeitz Law Firm, and Gary and Robin Zeitz, as well as the undeniable duplication of factual allegations and claims, the Court finds that the second element of claim preclusion is satisfied.

Finally, the claims asserted in this case are based on the same cause of action and underlying facts as asserted in *Copeland I*. Courts within the Third Circuit "take a 'broad view' of what constitutes the same cause of action." *Sheridan*, 609 F.3d at 261. To that end, the Third Circuit has disavowed attempts to create a "simple test ... for ... determining what constitutes a cause of action for *res judicata* purposes." *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984) (quoting *Donegal Steel Foundry Co. v. Accurate Prod. Co.*, 516 F.2d 583, 588 n. 10 (3d Cir. 1975)). Rather, courts "look toward the 'essential similarity of the underlying events giving rise to the various legal claims.'" *Lubrizol*, 929 F.2d at 963 (quoting *Davis v. U.S. Steel Supply, Div. of U.S. Steel Corp.*, 688 F.2d 166, 171 (3d Cir. 1982)); *see Blunt v. Lower Merion Sch. Dist.*, 767 F.3d 247, 277 (3d Cir. 2014) ("'*Res judicata* generally is thought to turn on the essential similarity of the underlying events giving rise to the various legal claims.'") (quoting *Sheridan*, 609 F.3d at 261). The "essential similarity" approach "reflects the 'present trend ... of requiring that a plaintiff present in one suit all the claims for relief that he may have arising out of the same transaction or occurrence.'" *Duhaney*, 621 F.3d at 348 (quoting *Lubrizol*, 929 F.2d at 963).

In conducting the essential similarity inquiry, courts look to the following *Athlone* factors: "'(1) whether the acts complained of and the demand for relief are the same ... ; (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same ... ; and (4) whether the material facts alleged are the same.'" *Sheridan*, 609 F.3d at 261 (quoting *Athlone*, 746 F.2d at 984). "It is not dispositive that a plaintiff asserts a different theory of recovery or seeks different relief in the two actions." *Blunt*, 767 F.3d at 277 (internal quotation marks and citation omitted); *see Elkadrawy v. Vanguard Grp., Inc.*, 584 F.3d 169, 173 (3d Cir. 2009) (advising that the same cause of action analysis "does not depend on the specific legal theory invoked, but rather 'the essential similarity of the underlying events giving rise to the various legal claims.'") (citation omitted); *Lubrizol*, 929 F.2d at 963 ("A mere difference in the theory of recovery is not dispositive."). And, as referenced above, claim preclusion "bars not only claims that were brought in the previous action, but also claims that could have been brought." Post, 501 F.3d at 169 (emphasis added). Thus, "'[t]he fact that several new and discrete discriminatory events are alleged does not compel a different result. A claim extinguished by *res judicata* includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.'" *Blunt*, 767 F.3d at 277 (citation omitted).

After reviewing the *Athlone* factors in light of the "essential similarity of the underlying events giving rise" to Plaintiff's legal claims, the Court finds that the claims in this action, as well as the underlying factual circumstances giving rise to those claims, are essentially duplicative of the claims and facts contained in *Copeland I*. Indeed, the witnesses and documents necessary to resolve both cases at trial would be nearly identical given the fact that both actions challenge the Final Judgment of Foreclosure related to the Camden Property. Next, the acts complained of,

theories of recovery, and material facts asserted in both actions are nearly identical. To that end, in *Copeland I*, Plaintiff asserted three causes of action arising from the foreclosure of her Camden Property: "(1) 'Amendment 4, 14, Due process,' (2) 'Theft (Bank Fraud),' and (3) 'RICO.'" *Copeland v. US Bank*, No. 18-19, 2018 WL 4145900, at *1. As the court found in *Copeland I*, Plaintiff's complaint, there, was "largely based on a state court proceeding" that resulted in the foreclosure of the Camden Property. *Id.* Specifically, Plaintiff alleged in *Copeland I* that Judge Famular "[b]ypass[ed] constitutional practice to separate litigants from money without an opportunity to be heard," "[i]ncompetently and fraudulently attempted to steal property using the court to legalize the stolen loot," "[p]ropagat[ed] a culture of judges stealing from litigants misusing laws, legal proceedings," "[l]egaliz[ed] theft by allowing USB Bank to steal 451 Line Street using finding a dead bird, and an affixed board placed on the building door," "made a conscious decision to bypass constitutional laws and commit an act of treason against the court and Dr. Copeland," and "refused to conduct an appearance by phone." *Id.* at 2. As to the City of Camden, Plaintiff alleged that it "den[ied] owners use of their building by allowing fraudulent charges to put the property beyond reach for redemption," "allow[ed] US Bank to bill foreclosure charges against statute," "falsely claim[ed] this building was abandoned," "facilitate[d] theft," "us[ed] boarding by MAS rentals as sign of abandonment while using the same method to secure their property against vandalism," and "[f]ailed to provide a 'legal bill.'" *Id.* at 1. Finally, with respect to the Zeitz Law Firm, Plaintiff claimed that it "[c]apitalized on the incompetence of the Chancery judge, Nan Famular," "[a]ttempted to obtain favorable foreclosure decision by circumventing Due Process," failed to "send proof of personal service," and "[e]ngag[ed] in unconstitutional practice[s]," such as "using a dead bird," "[u]se of boarding," and "waiting until the end of the week to take a week growth of grass" to "fraudulently claim abandonment." *Id.*

While this action includes an additional claim for unjust enrichment, as the Court has already noted, claim preclusion bars not only claims that were actually asserted in a previous action, but also "claims that <u>could have been brought</u>." *Post*, 501 F.3d at 169 (emphasis added). Thus, the relevant question is not whether Plaintiff did, in fact, assert that claim in *Copeland I*, but whether Plaintiff could have asserted an unjust enrichment claim in *Copeland I*. In that regard, because these claims all arise out of a state foreclosure proceeding that resulted in foreclosure of the Camden Property, and therefore, concern the same underlying facts, the Court cannot discern any reason why Plaintiff's unjust enrichment claim could not have been asserted in *Copeland I*. *See Elkadrawy*, 584 F.3d at 173–74 ("Even crediting [the plaintiff's] attempt to distinguish his second set of facts as 'new,' it is beyond dispute that these allegations 'could have been brought' as part of his first complaint."); *see also Haefner v. N. Cornwall Twp.*, 40 Fed.Appx. 656, 658 (3d Cir. 2002) ("Claim preclusion ... applies even where new claims are based on newly discovered evidence, unless the evidence was either fraudulently concealed or it could not have been discovered with due diligence."). Put simply, the claims asserted in this case are unquestionably duplicative to the claims that this Court dismissed in *Copeland I*. Barring Plaintiff's claims is thus "consistent with the purpose of claim preclusion, namely finality and avoidance of piecemeal litigation." *Sheridan*, 609 F.3d at 262. Accordingly, because the factual allegations underlying the claims in both actions are the same, and because Plaintiff either did bring, or could have brought, each of the claims asserted in this case in *Copeland I*, the Court finds that dismissal of Plaintiff's Operative Complaint against Sterling National, US Bank, the Zeitz Law Firm, Robin Zeitz, Gary Zeitz, Judge Famular, and the Tax Office is warranted under the doctrine of claim preclusion.

### C.  Plaintiff's Motions for Preliminary Injunction

Finally, the Court turns to Plaintiff's motions for preliminary injunction.  Based on the Court's dismissal of the Operative Complaint against Wells Fargo, Sell-All, and the *Copeland I* Defendants, Plaintiff's request for injunctive relief is denied with respect to those defendants.  As for Plaintiff's motions against the Attorney General's Office and the Governor's Office, those applications are denied because Plaintiff has not yet served these entities with her Complaint.  Indeed, on April 22, 2021, the Magistrate Judge ordered Plaintiff to effectuate service on any unserved defendant within thirty days and file proof of service related to those defendants by June 15, 2021.  As of the date of this Opinion, Plaintiff has not filed proof of service related to the Attorney General's Office and the Governor's Office.

Moreover, even if Plaintiff had served the Attorney General's Office and the Governor's Office with her Complaint, her motions for preliminary injunctive relief are denied based on a failure to demonstrate success on the merits.  Indeed, like Wells Fargo and Sell-All, the Operative Complaint does not contain any factual allegations expressly referencing any conduct on the part of the Attorney General's Office, the Governor's Office, Surety Title, or the Camden County Sheriff's Office.  Rather, the bulk of the Operative Complaint concerns allegations directed at non-defendants, including state and federal court judges involved with Plaintiff's prior lawsuits.  Without any factual allegations related to these remaining defendants, Plaintiff cannot possibly demonstrate a success on the merits, as required for this Court to grant preliminary injunctive relief.  Thus, Plaintiff's motions for preliminary injunctive relief are denied.

## IV.  <u>CONCLUSION</u>

For the reasons set forth above, Sell-All's motion to dismiss (ECF No. 95) and Wells Fargo's motion to dismiss (ECF No. 97) are **GRANTED**, and Plaintiff's claims against those

defendants are dismissed without prejudice. Next, the Court *sua sponte* dismisses Plaintiff's Operative Complaint against Sterling National, US Bank, the Zeitz Law Firm, Gary Zeitz, Robin Zeitz, Judge Famular, and the Tax Office, with prejudice, on *res judicata* grounds to the extent they relate to the Camden Property.  Finally, Plaintiff's motions for preliminary injunction (ECF Nos. 85 and 86) are **DENIED**.


Dated: May 26, 2021                                      /s/ Freda L. Wolfson
                                                         Freda L. Wolfson
                                                         U.S. Chief District Judge